### SOMMERS et al. v. WEILBACHER.

### No. 3017.

Court of Civil Appeals of Texas. Beaumont.
Nov. 3, 1936.

Rehearing Denied Nov. 18, 1936.

R. G. Harris and Lewright & Lewright, all of San Antonio, for appellants.

L. J. Gittinger, Schweppe & Schweppe, and G. H. Russell, all of San Antonio, for appellee.

WALKER, Chief Justice.

This appeal from the county court at law No. 1 of Bexar county, was originally filed in the San Antonio Court of Civil Appeals, then transferred to this court by orders of the Supreme Court.

The action was by appellee, Henry Weilbacher, as administrator of the estate of Frank Sommers, deceased, to recover of and from appellants Carter Sommers and G. S. Frazier the title and possession of certain personal property, and in the alternative for its value which, on the allegations of the petition, belonged to the estate of Frank Sommers, deceased. Appellants answered by general demurrer and general denial. The issues made by the evidence were that appellee, in his individual capacity, held a claim against the estate of the deceased and that he was prosecuting this suit in order that the funds derived from a sale of the property might be applied to his claim. The defendants introduced evidence raising the issue that Frank Sommers, prior to his death, conveyed the property in issue to Pearl and Frank Poyle, his niece and nephew, in satisfaction of a debt he owed them for borrowed money. In support of that defense, Pearl and Frank Poyle both testified that, prior to his death, their uncle, Frank Sommers, owed them about $600 and that in satisfaction of their debt he transferred to them the property in issue and that, while he was living, they took possession of it. In support of their theory of the case appellants offered in evidence the account book kept by Pearl Poyle, showing that Frank Sommers was indebted to her and her brother in the sum of $604.94. This account was entered, in part, in black ink, in blue ink, and in lead pencil. The ledger was sent up for our inspection and at this date, more than one year since the entry of the judgment, the black ink is still black and the blue ink is still blue.

We quote as follows from appellant's bill of exceptions No. 1, complaining of the argument of appellee's counsel:

"L. J. Gittinger, one of the attorneys for plaintiff, in the sole concluding argu-

ment before the jury on behalf of plaintiff, said in substance, to-wit:

" 'Counsel for plaintiff has told you that my associate in his argument to you, gentlemen of the jury, inferred certain things about the keeping of the account book by Miss Poyle, but I intend not to infer; I make charges. I state that the defense have shown a deep, dark scheme to defraud plaintiff, a hard working man, a German, out of his just debt against the estate. I charge that the book of account before you has certain items of charge against Frank Sommers that were made after this suit was filed. Look at the ink on the book of account. You see the ink writing which is blue and you see here the ink which is black. (Here counsel turned the face of the account book toward members of the jury, leaning against the jury box so as to give each member of the jury a clear vision of the writing; and pointed to each item which was specifically mentioned, as hereinafter said items are quoted.) You all know that as a matter of common knowledge ink which is blue turns black after a short time. But here you find items in blue ink, showing that the same, still blue, were written but a short while ago. I'll tell you what that means, gentlemen of the jury. It means this account was concocted for the purpose of beating this man out of his honest debt, and that man over there, Carter Sommers, is at the bottom of the scheme.'

"Counsel for defendants in his argument to the jury had referred to the opening argument of counsel for plaintiff, stating that therein said counsel had implied and sought to have the jury infer that Miss Pearl Poyle had made false entries in the account book in evidence, which account book showed the indebtedness owing to the Poyles by Frank Sommers. The uncontradicted evidence was that the said Miss Pearl Poyle had alone kept the said account book, and the said account book showed an aggregate indebtedness by the said Frank Sommers to the said Poyles of $604.94. Counsel for defendants argued before the jury that the personal property involved in the suit and shown in statement of facts was, according to the testimony of the expert Steele, of a market value less than $500.00, that the oral transfer of said property to the Poyles about two weeks before Frank Sommers' death in payment of the said $604.94 indebtedness to the said Poyles, was therefore a bona fide transfer.

"There was no evidence as to ink or the color of ink in respect of the entries in the account of the said Frank Sommers in said account book.

"The items in blue ink appearing on the said account book showing the account against Frank Sommers, and specifically referred to by the said Gittinger in his argument to the jury as aforesaid, were as follows:

" 'Aug. 21, 1929, borrowed Uncle Frank for place of business, $85.00.'

" 'Feb. 13, 1929, borrowed Uncle Frank to pay gas bill Schmidt, $19.00.'

" 'Dec. 18, Nash auto license, $12.24'.

"The testimony had also developed the fact that said Henry Weilbacher (plaintiff herein), individually, claimed an indebtedness against the estate of Frank Sommers, deceased, in some sum and was trying to collect the same. Defendants did not object to the argument hereinbefore quoted at the time same was made.

"Defendants now object to the said argument for the reasons hereinafter stated, to-wit:

"1. That the same constituted testimony by the said attorneys for the plaintiff as to the effect of ink; there having been no testimony or evidence introduced respecting inks and what colors they will take and when as to the said account book or otherwise.

"2. That said argument was highly prejudicial to the defendants and each of them, in that it was calculated to impeach the testimony and the veracity of the witnesses, Miss Pearl Poyle and her brother, Frank Poyle, in respect of the oral transfer of the personal property involved in this suit and the indebtedness which the said transfer was made to pay.

"3. That the said argument was calculated to and probably did cause the rendition of the verdict which was rendered by the jury in this cause.

"4. That said argument was inflammatory, intended to impeach the veracity of the witnesses, Miss Pearl Poyle and her brother, Frank Poyle, and thereby to render their testimony with reference to the indebtedness owing by the said Frank Sommers to them and their father of such doubtful value as to cause the jury to discard the same in favor of other evidence which was offered by the plaintiff in the cause."

The bill was approved with the qualification that appellants made no objection to the argument at the time it was made to the jury. This argument was reversible error. There was no evidence that "blue" ink turns "black," and in this particular instance the "blue" ink did not turn "black." In view of the entire record, the argument was inflammatory and we think highly prejudicial to appellants.

The other assignments of error are without merit.

For the reasons stated, the judgment of the lower court is reversed, and the cause remanded for another trial.